UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LABARBARA ALFORD, KEVIN
JOHNSON, and DESOTA JOHNSON,

    Plaintiffs,                     CIVIL ACTION NO. 15-cv-11464

    v.                             DISTRICT JUDGE ROBERT H. CLELAND

LIBERTY MUTUAL FIRE           MAGISTRATE JUDGE MONA K. MAJZOUB
INSURANCE COMPANY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiffs Labarbara Alford, Kevin Johnson, and Desota Johnson commenced this action against Defendants Liberty Mutual Fire Insurance Company and Michigan Automobile Insurance Placement Facility in the Macomb County Circuit Court on March 16, 2015, alleging that Defendants violated Michigan Compiled Laws § 500.3101, *et seq.*, by failing to pay Plaintiffs' No-Fault/Personal Injury Protection (PIP) benefits for alleged injuries suffered in an April 2, 2014 automobile accident. (Docket no. 1-1.) Defendant Liberty Mutual Fire Insurance Company removed the matter to this court on April 22, 2015, based on diversity jurisdiction. (Docket no. 1.) On July 24, 2015, the court dismissed Defendant Michigan Automobile Insurance Placement Facility as fraudulently joined (docket no. 8); thus, Defendant Liberty Mutual Fire Insurance Company is the only defendant that remains in this matter.

Before the Court is Defendant's Motion for Summary Judgment. (Docket no. 13.) Plaintiffs responded to Defendant's Motion (docket no. 17), and Defendant replied to Plaintiffs' Response (docket no. 18). Defendant also filed a supplemental brief regarding recent controlling

authority relevant to this matter. (Docket no. 19.) The Motion has been referred to the undersigned for consideration. (Docket no. 14.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. RECOMMENDATION

For the reasons that follow, it is recommended that Defendant's Motion for Summary Judgment (docket no. 13) be **GRANTED** and that this matter be dismissed in its entirety.

## II. REPORT

### A. Background

On September 15, 2010, Gwendolyn Pean applied for an automobile insurance policy with Defendant. (Docket no. 13 at 1; docket no. 17 at 2.) Defendant asserts that the information provided by Ms. Pean in the application was the basis for the issuance and subsequent renewals of LibertyGuard Auto Policy No. A02-248-676818-70 3 1, the most recent renewal being effective September 15, 2013 to September 15, 2014. (Docket no. 13 at 2, 3-4.) Notably, Ms. Pean was the only driver listed in the "Operator Information" section of the application for the two vehicles insured by the policy – a 2001 Ford Escort and a 2008 Ford Focus. (Docket no. 13 at 2-3; docket no. 13-1 at 7; docket no. 17 at 2-3.) The "Application Authorization" section of the application, which purportedly bears Ms. Pean's e-signature, contains statements (1) advising that any person who, with intent to defraud the insurer, files an application or a claim that includes false, incomplete, or misleading information, will be subject to imprisonment; and (2) acknowledging an understanding by the applicant that the policy may be rescinded and declared void if the application contains any false or misleading material information. (Docket no. 13 at 3; docket no. 13-1 at 8; docket no. 17 at 3.) Additionally, the written policy limits the insured's

ability to transfer any rights and duties under the policy without the written consent of the insurer, and it contains a fraud provision stating that the policy will not provide coverage for "any insured or any [sic] seeking benefits," who conceals or misrepresents a material fact, makes false statements, or engages in fraudulent conduct related to a loss, an accident, the insurance, or the policy application. (Docket no. 13 at 4-5; docket no. 17 at 3.)

According to Defendant, on January 11, 2014, Ms. Pean called Defendant to inquire about an outstanding premium balance due on the policy, and she was advised to make the overdue payments to avoid cancellation; Ms. Pean declined to make any payments at that time. (Docket no. 13 at 5.) Subsequently, and unbeknownst to Defendant, Ms. Pean passed away on January 17, 2014. (Docket no. 13 at 5; docket no. 13-4; docket no. 17 at 4.) Defendant then sent a notice of cancellation for non-payment to Ms. Pean on February 24, 2014, which cancellation became effective on March 11, 2014 at 12:01 a.m., as no payment was made. (Docket no. 13 at at 5-6; docket no. 13-1 at 12-14.) Later that day, March 11, 2014, at 11:09 a.m., Ms. Pean's daughter, Plaintiff Alford, admittedly called Defendant, impersonated her mother, and made a payment toward the policy premium over the phone, after which the policy was reinstated. (Docket no. 13 at 6; docket no. 17 at 4.) That same day, at 1:05 p.m., Ms. Pean's other daughter, Artimese Scott, called and advised Defendant of Ms. Pean's death. (Docket no. 13 at 7; docket no. 17 at 4.) Defendant claims that it advised Ms. Scott to provide the trust, proof of estate, or registration, and that the policy was cancelled, effective March 11, 2014 at 12:01 a.m. (Docket no. 13 at 7.)

Plaintiffs were then involved in an automobile accident on April 2, 2014, during which Plaintiff Kevin Johnson was driving the 2008 Ford Focus listed under the policy; Plaintiffs Alford and Desota Johnson were passengers in the vehicle. (Docket no. 13 at 7; docket no. 17 at

3

5.) After the accident, Plaintiff Alford called Defendant and again admittedly represented herself as Ms. Pean in order to report the accident and initiate a claim for benefits. (Docket no. 13 at 7-8; docket no. 17 at 5.)

Defendant asserts that upon conducting an investigation of the accident, it discovered material misrepresentations made by Ms. Pean in her insurance application, specifically, that Plaintiffs Alford and Kevin Johnson were not listed as drivers on the policy. (Docket no. 13 at 8-9.) Defendant asserts that it also discovered the fact that Plaintiff Alford misrepresented herself to Defendant as Ms. Pean on two separate occasions, the first on March 11, 2014 when she called to have the policy reinstated and the second when she called to report the accident. (*Id*.) Defendant claims that it consequently rescinded the insurance policy, declaring it to be null and void effective March 11, 2014, as if it had never been reinstated, and denied Plaintiffs' claim for No-Fault PIP benefits. (Docket no. 13 at 10; docket no. 13-1 at 16.) Defendant notified Ms. Pean's daughters, Plaintiff Alford and Ms. Scott, of the policy rescission and the claim denial in a July 31, 2014 letter. (Docket no. 13-1 at 16.)

### B. Governing Law

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 13.) Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

4

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

**C.    Analysis**

Defendant argues that summary judgment in its favor is appropriate for the following reasons:  (1) Plaintiffs are not entitled to PIP benefits under Michigan Compiled Laws §§ 500.3113 or 500.3114 because the 2008 Ford Focus did not have the requisite security in effect under Michigan's No-Fault Act, Michigan Compiled Laws § 500.3101, *et seq.*, given that Plaintiff Alford became an owner of the Focus upon Ms. Pean's death; (2) there is no coverage or other benefits available under the policy because it was properly and validly rescinded based on Plaintiff Alford and Ms. Pean's misrepresentations; and (3) even if the policy was not validly

5

rescinded, it would not provide coverage or other benefits because Plaintiff Alford and Ms. Pean violated the policy's fraud provision. (Docket no. 13 at 10-12.) Plaintiffs respond that Defendant is not entitled to summary judgment because (1) Ms. Pean's representations in her application and Plaintiff Alford's representations to Defendant do not constitute fraud sufficient to justify rescission of the policy; and (2) even if the policy was validly rescinded, the rescission is not effective as to Plaintiffs Kevin Johnson and Desota Johnson under the "innocent third-party rule." (Docket no. 17 at 6-8.) Defendant replies that Plaintiffs' reliance on the "innocent third-party rule" is misplaced under Michigan law. (Docket no. 18 at 6-8; docket no. 19.)

Under Michigan's No-Fault Act, "[t]he owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance [PIP], property protection insurance, and residual liability insurance." Mich. Comp. Laws § 500.3101(1). In the case of an accident, a person is not entitled to PIP benefits for accidental bodily injury if "[t]he person was the owner or registrant of a motor vehicle . . . involved in the accident with respect to which the security required by section 3101 . . . was not in effect" at the time of the accident. Mich. Comp. Laws § 500.3113(b).

Defendant seemingly argues that Plaintiff Alford, having become an owner of the 2008 Ford Focus after Ms. Pean's death, was required to personally insure the vehicle under MCL § 500.3101(1), and because Plaintiff Alford was not personally insured under the subject policy, Defendant is not liable to Plaintiffs for PIP benefits under section 500.3113(b). Michigan's Court of Appeals, however, has held that the language in MCL § 500.3113(b) precluding recovery of PIP benefits links the security or insurance requirement solely to the vehicle, not to the person standing in the shoes of an owner or registrant. *Iqbal v. Bristol West Ins. Group*, 748 N.W.2d 574, 579, 583 (Mich. Ct. App. 2008). The state court of appeals later clarified and

narrowed its holding in *Iqbal* by stating that each and every owner of the vehicle need not obtain insurance to receive PIP benefits, so long as one owner or registrant of the vehicle has the requisite coverage. *Barnes v. Farmers Ins. Exchange*, 862 N.W.2d 681, 684-85 (Mich. Ct. App. 2014). Thus, assuming for purposes of this motion that Plaintiff Alford was an owner of the 2008 Ford Focus, the proper inquiry in this matter is not whether Plaintiff Alford personally insured the vehicle under the policy issued by Defendant, but whether the vehicle was properly insured under the subject policy by any owner or registrant at the time of the April 2, 2014 accident. To make this determination, the validity of the policy's rescission, effective March 11, 2014, must be examined.

Defendant claims that it properly and validly rescinded the policy in accordance with Michigan law based upon Ms. Pean's failure to list Plaintiffs Alford and Kevin Johnson as drivers in the insurance application as well as Plaintiff Alford's impersonation of her mother in order to reinstate the policy and to subsequently file a claim for benefits. (Docket no. 13 at 27-33.) In Michigan, it is well-settled that "[w]here a policy of insurance is procured through the insured's intentional misrepresentation of a material fact in the application for insurance, and the person seeking to collect the no-fault benefits is the same person who procured the policy of insurance through fraud, an insurer may rescind an insurance policy and declare it void *ab initio*." *Hammoud v. Metro. Prop. & Cas. Ins. Co.*, 563 N.W.2d 716, 718 (Mich. Ct. App. 1997) (citing *Cunningham v. Citizens Ins. Co. of America,* 350 N.W.2d 283 (Mich. Ct. App. 1984)); *see also Lash v. Allstate Ins. Co.*, 532 N.W.2d 869, 872 (Mich. Ct. App. 1995). A misrepresentation is material "where communication of it would have had the effect of 'substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an

increased premium.'" *Oade v. Jackson Nat. Life Ins. Co. of Michigan*, 632 N.W.2d 126, 131 (Mich. 2001) (quoting *Keys v. Pace,* 99 N.W.2d 547, 551 (Mich. 1959)).

Here, it is undisputed that at 11:09 a.m. on March 11, 2014, Plaintiff Alford, the daughter of the named insured, Gwendolyn Pean, called Defendant, represented herself as her deceased mother, and made a payment of the policy premium to have the policy reinstated. It is also undisputed that when Plaintiff Alford called Defendant to report the April 2, 2014 accident, she again misrepresented herself as her mother. Not only is Plaintiff Alford's impersonation of her deceased mother inherently fraudulent, but Plaintiff Alford also committed silent fraud[1] by failing to disclose to Defendant that her mother had passed away and that she and Plaintiff Kevin Johnson would be driving the 2008 Ford Focus.

Plaintiffs argue that Plaintiff Alford's misrepresentations were not material and therefore do not justify rescission of the policy because Defendant did not rely on Plaintiff Alford's statements in reinstating the policy. (Docket no. 17 at 13-15.) Specifically, Plaintiffs assert that Defendant cannot demonstrate that it relied on Plaintiff Alford's misrepresentations because on the same day that Plaintiff Alford reinstated the policy, Defendant received actual notice from Plaintiff Alford's sister, Artimese Scott, that Ms. Pean had passed away. Therefore, Plaintiffs argue, "Defendant had full knowledge of the facts when the policy was reinstated" and "[i]t took no action to rescind the policy until *after* it was asked to pay for benefits." (*Id*. at 14 (emphasis in original).)

Plaintiffs' argument lacks merit, as Plaintiffs misinterpret the facts with regard to Defendant's knowledge of Ms. Pean's death relative to the reinstatement of the policy. In fact, Plaintiff Alford contacted Defendant at 11:09 a.m. on March 11, 2014 to reinstate the policy;

---

[1] Michigan's silent fraud doctrine holds that "when there is a legal or equitable duty of disclosure, a fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood." *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 569 (Mich. 2012) (citations and internal quotation marks omitted).

8

Plaintiff Alford's sister advised Defendant of Ms. Pean's passing approximately two hours later, at 1:05 p.m. Thus, contrary to Plaintiffs' assertion, Defendant was not on notice of Ms. Pean's death when it reinstated the policy. While Plaintiff Alford and Ms. Scott's March 11, 2014 telephone calls presumably put Defendant on notice of a factual discrepancy involving Ms. Pean's insurance policy after the policy was reinstated, Defendant attests in a sworn affidavit that it actually discovered Plaintiff Alford's misrepresentations after the April 2, 2014 accident, through its investigation of the claim for benefits.[2] (Docket no. 13-1 at 5; docket no. 13 at 8.) Furthermore, in the rescission letter attached as an exhibit to Defendant's Motion, Defendant indicates that it would not have reinstated the policy had it known of Plaintiff Alford's misrepresentations. (Docket no. 13-1 at 16.) Certainly, Defendant would not have reinstated the policy as written, i.e., with Ms. Pean as the only authorized driver, had it known that she was deceased.

Defendant's Motion is well-supported by the evidence submitted, and Plaintiff has failed to come forward with significant probative evidence showing that a genuine issue of material fact exists regarding the materiality of Plaintiff Alford's misrepresentations. Accordingly, the undersigned concludes that Plaintiff Alford's impersonations of her mother to Defendant constitute material misrepresentations sufficient to entitle Defendant to rescind the policy under Michigan law, and the rescission is therefore valid.[3] Because the policy was validly rescinded as of March 11, 2014, the 2008 Ford Focus did not have the requisite security under Michigan's

---

[2] Notably, the Michigan Court of Appeals has explicitly stated that it "would not interfere with [a] defendant's right to rescind [a] policy ab initio had it chosen to do so upon discovery of the material misrepresentation, regardless of whether that discovery occurred before or after the loss." *Burton v. Wolverine Mut. Ins. Co.*, 540 N.W.2d 480, 482 (Mich. Ct. App. 1995) (further noting that in rescission cases, discovery of the misrepresentation generally occurs after the loss).

[3] Because the rescission is valid based on Plaintiff Alford's material misrepresentations alone, the Court does not reach the issue of whether Ms. Pean made a material misrepresentation in her insurance application regarding the identity of the vehicles' operators, or whether her alleged misrepresentation forms a proper basis for rescission. The Court also need not reach the issue of the effect of the alleged violations of the policy's fraud provision.

No-Fault Act, MCL § 500.3101, *et seq.*, as of the date of the accident, April 2, 2014, and Plaintiffs are therefore not entitled to PIP benefits under MCL §§ 500.3113 or 500.3114.

Plaintiffs argue that even if the policy was validly rescinded, the rescission is ineffective as to Plaintiffs Kevin Johnson and Desota Johnson pursuant to the innocent third-party rule, which estops an insurer from asserting fraud to rescind an insurance policy where innocent third parties are involved.[4]  (Docket no. 17 at 15-17 (citing *Lake States Ins. Co. v. Wilson*, 586 N.W.2d 113, 115 (Mich. Ct. App. 1998).)  As Defendant points out, however, in *Bazzi v. Sentinel Ins. Co.*, --- N.W.2d ----, 2016 WL 3263905 (Mich. Ct. App. June 14, 2016), the Michigan Court of Appeals recently invalidated Michigan's innocent third-party rule.  (*See* docket no. 19.)  Specifically, the *Bazzi* court held that "if an insurer is able to establish that a no-fault policy was obtained through fraud, it is entitled to declare the policy void ab initio and rescind it, including denying the payment of benefits to innocent third-parties."  *Bazzi, supra*.  Accordingly, Defendant's valid rescission of the subject policy does indeed apply to Plaintiffs Kevin Johnson and Desota Johnson, and they are not entitled to the payment of PIP benefits in this matter.

### D. Conclusion

For the above-stated reasons, the court should **GRANT** Defendant's Motion for Summary Judgment (docket no. 13) and dismiss this matter in its entirety.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v.*

---

[4] The parties do not dispute whether Plaintiffs Kevin Johnson and Desota Johnson are innocent third parties; the Court will assume that they are for purposes of this motion only.

*Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: January 4, 2017         s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: January 4, 2017         s/ Lisa C. Bartlett
                               Case Manager